Red Star Good morning, Your Honors. For the record, my name is Andrew Huff. I'm an attorney for the appellant, William Red Star. I'd like to reserve two minutes for rebuttal. Your Honors, the issues on appeal today, they're basic – they're two basic issues. One is whether the district court erred in not granting a motion to suppress a confession that was obtained through the use of a lie detector test. The second issue is whether the district court erred in limiting defense counsel's examination of the alleged victim in this case by preventing a recross and also by not allowing the use of a medical record to examine the alleged victim with. I would like to concentrate on the second of those two bases for the appeal during this argument. This was a two-day trial. The underlying charge was sexual abuse of an incapacitated person. The thing that was interesting about this trial is that there were no eyewitness testimony and no physical evidence indicating that there had ever been any contact between the alleged victim and my client, Mr. William Red Star. There was no evidence of any injury, no evidence that, in fact, the two people ever had physical contact. So the evidence that the government did have was my client's confession. And there were all sorts of problems with that confession, which became the underlying basis for the motion to suppress that confession. But you had a situation at trial, at the beginning of trial, where you had no evidence except the defendant's confession. However, on direct, when the government was asking questions of the alleged victim, for the first time there was introduced evidence via hearsay that the nurse had observed by the defendant. Did you object to that hearsay? What's that? Did you object to that hearsay? I did. I objected to the hearsay at that time. The alleged victim basically said that the nurse had told her that it looked like she was having her period. And the alleged victim said, and that wasn't right because my period had ended two  weeks prior to the beginning of her vagina. And that's when I objected, because it was all hearsay. It was basically testimony about what the nurse was saying to her, and the nurse was not present, obviously. I objected, and the district court overruled that objective, saying it was admissible as testimony made for the purpose of diagnosing someone's medical condition. So the judge did allow that in, that original piece of hearsay, which is a critical piece of hearsay, because it shifts. But it's not a point that you've raised here on appeal. I did, yes. I did. I objected on, at, below, that it was hearsay. And it's fundamental to this appeal, because it's indicative of the unfairness of the decisions at the trial court level. In other words, this piece was let in, and the actual medical record evidence of that same nurse, which contradicted what the alleged victim had said about what the nurse said, was not let in. And that's where you get the unfairness at the trial level. Did you subpoena the nurse? I did not, Your Honor. And it was a mistake. The government had stated in its submissions to the court that the nurse was going to be called as a witness, but the government did not produce the nurse, so I did not subpoena the nurse. So the whole of my attempt at getting this information in through the alleged victim was in response to the fact that the nurse wasn't there. But it was a medical record. It was a record that was produced for the purpose of diagnosing this person. So it was admissible. But there was nothing that would suggest that this victim knew anything about what was in the medical record. Well, I think there was a lot of when I was cross-examining her, I was asking her what the nurse asked her and what the responses had been. I asked her if she knew about the medical record that was being filled out, and she said yes. And also, she had signed the front of the medical record, allowing it to be used for criminal proceedings, subsequent criminal proceedings. So she knew about it, but I think it's a fair characterization to say that she didn't know about, you know, everything that was in it page after page. And that's what made it difficult to kind of cross-examine her on it. But it was a medical record, and I used it. I was using it to cross-examine her, and inconsistencies started to appear. The first one was about teeth brushing, I think. And I attempted to use that record to refresh her recollection. And the district court judge said, no, you can't do that. She doesn't know anything about the record. So at the end of my cross, a break occurred, and I asked the, there was a redirect. I'm sorry, there was a redirect, and then a break occurred. And out of the presence of the jury, I asked the judge for an opportunity to recross, because I wanted explicit direction from the court about whether I could reference the medical records explicitly with this witness. At that point, the district court said no. But later, we had another kind of voir dire outside the presence of the jury about whether I could call this witness on direct and use the medical record, because there was a glaring contradiction between the medical record and what she had said. And he had allowed the hearsay evidence to come in before. But after this voir dire, he said it wasn't, the district court judge said it wasn't a medical record, didn't fit within the medical record's exception. And also denied my other arguments that it was a prior recorded recollection that she had adopted because of the signature. Anyway, we went through several arguments. That theory wouldn't fly because you've already told us that she didn't know all the information in the document. Right. I made the argument, Your Honor, and it came out during voir dire. That's when it came out, that she had not seen the other information in there. So I think it was, on that basis, properly denied. But it was a medical record. I don't think there's any way around it. That's the sole purpose. And as such, I thought it was a- But medical records just don't lock themselves into evidence, do they? That's true, Your Honor. But the point, I guess the point is, is that he allowed in the hearsay testimony of the nurse. It sailed right in. And then the actual written medical record that was signed by that nurse was not allowed to be used for purposes of impeachment or if it was a medical record, admissible as a medical record. But would you turn to, there was actually a confession. And if the confession was admissible, how much more would be needed for the jury? Maybe all of the rest of this is kind of irrelevant. Right. I mean, the question is whether maybe it's harmless error because of this confession lurking out there. And I think that's what makes this important, is that going into the trial, there was no evidence of any injury. There was no evidence besides his confession that any of this occurred. And so, and there was problems with that confession. He had denied that he'd done it on four separate times in law enforcement over a course of weeks. They kind of kept after him. Then they got him hooked up to a lie detector machine and then suggested that he wasn't telling the truth. Then the FBI agent actually wrote out large sections of the confession and had him sign it. So that's how the confession occurred. And that was one of the reasons I said it was a coerced confession. Well, he was advised of his rights. He was. But in light of kind of the- Well, how was it coerced? Well, basically, he had said unequivocally that he didn't do it many times to law enforcement, and they kept after him. They kept after him. And during the use of the lie detector desk, he actually tried to pick the stuff off of them at one point and end the interview. And the interview kept going. They let him pick the stuff off of them. And then they wrote this thing out, and he signed it. And he testified on direct that he was confused and scared and just wanted basically everything to end. That's what he said on direct. So he testified himself that it wasn't a true confession. Now, given all of these problems with the confession, it's not harmless error that this other evidence came in uncontested. Because had it not come in, I think it would have been a real open question whether a jury would say that was a valid confession in light of no other evidence. You know, we're hesitant to say beyond a reasonable doubt that this man is guilty. But with that physical evidence that came in, or I should say hearsay evidence, not physical evidence, of physical injury, without the contrary evidence indicated by the medical record that it wasn't true, then it did shift the whole thing so that it wasn't harmless error. Your Honor, I'd like to reserve the rest of my time for a moment. All right. Fine. Good morning again, Your Honor. The first issue that I want to take up with the Court is the argument that there was really no evidence here other than the confession. And we have a girl that jumps out of bed naked and makes a 911 call, and the officers arrive at a hotel room to find her distraught, and a man, as Mr. Huff has indicated, does not have any prior relationship with her. It sounded like their boyfriend and girlfriend. And she's accusing him of raping him. So I hardly think that there's just his confession and nothing more. The circumstantial evidence here was really substantial and compelling. As far as the confession goes, I'd challenge anyone to say what these agents did wrong. And as you all know, under Connolly v. Colorado, we have the first threshold in a coercion case is, what did the police officers do that was inappropriate? And they did nothing here that was inappropriate other than to ask, and I don't think it's inappropriate at all, but they asked him to take a polygraph because he insisted he was innocent. And during the polygraph, he got agitated and ultimately said that he did it. And this is a guy that had been through the polygraph experience before. I mean, he knew the agent. There's just simply nothing in this record, Your Honor, that indicates that the police officers or the FBI agents or tribal police in this case did anything at all improper. And therefore, the coercion argument should fall for that. As far as the medical evidence, as the Court has pointed out, this is a problem that occurred in the defense. There was no motion to continue if there had been to try to get the nurse there when they realized that the government wasn't calling them. There's nothing on the record to indicate that they were going to try to stipulate the record to come in, although I'm sure counsel would not have stipulated to that because there's going to be some, you'd want the person there. I mean, the issue that was brought up with the victim was a verbal conversation between her and the nurse. And the medical record that said there was no injuries could very well have been explained because, as you recall from that exchange, the nurse had said, I see a little blood. Are you having your period? She didn't say there were injuries. So there's nothing inconsistent about what came into the record and what was in the medical record. So, ladies, Your Honors, I just think that in this particular instance, there was no error at all, and the confession was properly brought in. He was legitimately stopped, as Your Honors had noted. Medical records just don't walk in and introduce themselves just because there's an exception for them. If there's a proper foundation, you can't have no foundation and just let them in and let them sit there because there should have been cross-examination. Now, there probably was error in allowing him the testimony through her that was what the nurse said. Is that not right? Your Honor, I question whether that was error because I don't necessarily, I mean, I think you could almost argue that there's a dialogue going on, and she's relating what that dialogue is. There's no indication that's offered for any other purpose other than what the two were exchanging and discussing about because, as you recall, there was no injury. So, I mean, what probative value does it have other than the fact that you've got a witness that starts to testify, and I had to take off my clothes, and the nurse said to me, you're bleeding, or are you having your period? And that's basically all that got in. So I don't know that there was any intent on the part of the government to offer it for its truth merely as a context for what had occurred. What the jury would have heard was that it wasn't the time of her period, and she was bleeding. Mm-hmm. And that was true, Your Honor. That's true. And there could have been some curative instructions to that or further discussion had the defense, you know, indicated at that time that that's the problem that they had or would have taken it up, asked for a curative instruction. They did object. But there was no request for a curative instruction as to how it came in. There was no motion for continuance. There was nothing to try to cure the situation. They just left it there and moved on. They didn't ask that it be stricken? I don't believe so, Your Honor. Just objection. And the judge made his ruling. That it was okay. Right. That he felt that it came in under the medical diagnosis and treatment exception. Thank you, Your Honor. If you have no other questions, that's all I have. All right. Some rebuttal. Thank you, Your Honor. Just very rapidly, because I know I don't have much time left. The prosecutor mentioned there was other circumstantial evidence. There were multiple people in the room that morning. There were, I think, two or three other males in the room and two females. So there was lots of people in the room. So it wasn't as though these two were the only people in the room. And she woke up and said, oh, my God, I've been raped. In fact, some of those people were missing their clothes. So it's not clear at all from the circumstantial evidence that my client did anything or ever touched the alleged victim. I do want to note for the record that, as you correctly noted, Your Honor, there was a pretty developed exchange between the prosecutor and the alleged victim, establishing first it wasn't the time for her period, establishing second that the nurse had said, made these comments about the period, must have been your period. And then he closed his redirect with, again, solid confirmation that there was some sort of injury. And it would look like her period, but it wasn't because she wasn't having her period. So it was, I think, offered for the truth of the matter asserted. Thank you. All right, the matter is submitted. We'll take up the last.
judges: B. Fletcher, Pregerson, Selna